No. 20-9

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

RICHARD ALLEN JACKSON,
Appellant,

v.

UNITED STATES OF AMERICA,
Appellee.

_____

REPLY BRIEF

_____

On Appeal from the United States District Court
for the Western District of North Carolina (No. 1:16-cv-212-MR)

Shawn Nolan
Andrew Childers
Federal Community Defender for
 the Eastern District of Pennsylvania
601 Walnut Street, Suite 545 West
Philadelphia, PA 19106
(215) 928-0520
andrew_childers@fd.org

January 20, 2022

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................. ii

ARGUMENT ..................................................................................................... 1

I.     MR. JACKSON'S *JOHNSON* CLAIM IS NOT PROCEDURALLY
       BARRED. ............................................................................................... 1

       A.    Mr. Jackson's Claim is Not Defaulted Because it is Based on a
             New Constitutional Rule of Criminal Law that was Previously
             Unavailable. ................................................................................... 1

       B.    There is Cause and Prejudice and Actual Innocence to Excuse
             Any Possible Default. ..................................................................... 5

II.    FEDERAL MURDER IS NOT A CRIME OF VIOLENCE UNDER
       THE FORCE CLAUSE OF 18 U.S.C. § 924(C)(3). ............................... 7

       A.    Federal First-Degree Murder is Not a Crime of Violence Under
             the Force Clause of 18 U.S.C. § 924(C)(3) Because it is an
             Indivisible Offense that can be Committed by Felony Murder
             which Requires No More than an Accidental Killing. ................... 7

             1.    Federal First-Degree Murder is a Single Indivisible Offense. ....... 7

             2.    Federal First-Degree Murder Does Not Require the Mens
                   Rea or Violent Physical Force Necessary of a Crime of
                   Violence. ................................................................................ 13

       B.    Even under the Modified Categorical Approach, Mr. Jackson is
             Entitled to Relief. .......................................................................... 17

III.   AGGRAVATED SEXUAL ABUSE IS NOT A CRIME OF
       VIOLENCE UNDER THE FORCE CLAUSE OF 18 U.S.C.
       § 924(C)(3). ........................................................................................... 21

IV.    THE CONSTITUTIONAL ERROR IS NOT HARMLESS. ..................... 23

V.     MR. JACKSON REQUESTS THE APPROPRIATE REMEDY. ................ 27

CONCLUSION ................................................................................................ 28

i

# TABLE OF AUTHORITIES

Fifth Amendment to the United States Constitution ............................................... 25

**Federal Cases**

*Bailey v. United States*, 516 U.S. 137 (1995) ............................................................. 4

*Borden v. United States*, 141 S. Ct. 1817 (2021) ....................................................... 7

*Bousley v. United States*, 523 U.S. 614 (1998) ......................................................... 4

*Clay v. United States*, 537 U.S. 522 (2003) ............................................................. 3

*Cole v. United States*, 842 F. App'x 400 (11th Cir. 2021) ...................................... 22

*Ex parte Bain*, 121 U.S. 1 (1887) ........................................................................... 24

*Gordon v. Barr*, 965 F.3d 252 (4th Cir. 2020) ......................................................... 23

*In re Irby*, 858 F.3d 231 (4th Cir. 2017) ........................................................... 14, 15

*In re Thomas*, 988 F.3d 783 (4th Cir. 2021) ......................................................... 2, 4

*Johnson v. United States*, 576 U.S. 59 (2015) .......................................................... 1

*Mathis v. United States*, 136 S. Ct. 2243 (2016) ............................................... 12, 13

*Rutledge v. United States*, 517 U.S. 292 (1996) ...................................................... 27

*Schad v. Arizona*, 501 U.S. 624 (1991) ............................................................... 8, 12

*Shepard v. United States*, 544 U.S. 13 (2005) .................................................... 11, 18

*Silvers v. United States*, 90 F.3d 95 (4th Cir. 1996) ............................................... 27

*Stirone v. United States*, 361 U.S. 212 (1960) ................................................... 25, 26

*Stokeling v. United States*, 139 S. Ct. 554 (2019) .............................................. 21, 22

*Sullivan v. Louisiana*, 508 U.S. 275 (1996) ........................................................... 26

*United States v. Adams*, 814 F.3d 178 (4th Cir. 2016) ............................................. 6

*United States v. Aparicio-Soria*, 740 F.3d 152 (4th Cir. 2014) ............................. 23

*United States v. Bell*, 704 F. App'x 297 (4th Cir. 2017) ........................................ 14

*United States v. Bennerman*, 785 F. App'x 958 (4th Cir. 2019) .............................. 5

*United States v. Bowen*, 936 F.3d 1091 (10th Cir. 2019) ........................................ 6

*United States v. Campbell*, 669 F. App'x 169 (4th Cir. 2016) .............................. 14

*United States v. Cantu*, 964 F.3d 924 (10th Cir. 2020) ........................................ 13

*United States v. Castleman*, 572 U.S. 157 (2014) .................................................. 15

*United States v. Chapman*, 666 F.3d 220 (4th Cir. 2012) ..................................... 18

*United States v. Clay*, 627 F.3d 959 (4th Cir. 2010) ............................................ 18

*United States v. Davis*, 139 S. Ct. 2319 (2019) ..................................................... 1

*United States v. Floresca*, 38 F.3d 706 (4th Cir. 1994) ......................................... 25

*United States v. Fuertes*, 805 F.3d 485 (4th Cir. 2015) ......................................... 11

*United States v. Higgs*, 353 F. 3d 281 (4th Cir. 2003) ........................................... 24

*United States v. Lee*, 697 F. App'x 175 (4th Cir. 2017) ......................................... 14

*United States v. Leshen*, 453 F. App'x 408 (4th Cir. 2011) .................................... 22

*United States v. Mathis*, 932 F.3d 242 (4th Cir. 2019) ............................... 10, 14, 15

*United States v. Morales–Machuca*, 546 F.3d 13 (1st Cir. 2008) ......................... 14

*United States v. Norman*, 935 F.3d 232 (4th Cir. 2019) ........................................ 16

*United States v. Parrish*, 767 F. App'x 440 (4th Cir. 2019) ................................. 14

*United States v. Randall*, 171 F.3d 195 (4th Cir. 1999) ........................................ 25

*United States v. Reece*, 938 F.3d 630 (5th Cir. 2019) ............................................. 6

*United States v. Segers*, 271 F.3d 181 (4th Cir. 2001) ............................................ 3

*United States v. Shell*, 789 F.3d 335 (4th Cir. 2015) ............................................. 22

*United States v. Simms*, 914 F.3d 229 (4th Cir. 2019) ........................................... 26

*United States v. Welch*, 683 F.3d 1304 (11th Cir. 2012) ......................................... 4

*Welch v. United States*, 578 U.S. 120 (2016) ......................................................... 2

## Federal Statutes

18 U.S.C. § 924 ............................................................................................. *passim*

18 U.S.C. § 1111 ........................................................................................... *passim*

18 U.S.C. § 2241 .......................................................................................... 21, 23

18 U.S.C. § 2246 .......................................................................................... 21, 22

28 U.S.C. § 2255 ........................................................................................... *passim*

Appellant Richard Jackson respectfully submits this reply to the Government's brief.

## ARGUMENT

### I.   MR. JACKSON'S *JOHNSON* CLAIM IS NOT PROCEDURALLY BARRED.

The Government argues that Mr. Jackson procedurally defaulted his claim by failing to raise it during trial and on direct appeal, and that Mr. Jackson can neither establish cause and prejudice nor actual innocence to excuse this default. *Response* at 8-10. This argument is misplaced.

### A.   Mr. Jackson's Claim is Not Defaulted Because it is Based on a New Constitutional Rule of Criminal Law that was Previously Unavailable.

The Government claims that "Jackson was obligated to raise his claim during his criminal case and on direct appeal." *Response* at 8. But the plain language of § 2255(h) demonstrates that Mr. Jackson was not "obligated" to raise his claim prior to the Supreme Court's announcement of the retroactive new rule of constitutional law in *Johnson v. United States*, 576 U.S. 59 (2015).

Mr. Jackson's claim was not available before the new rules of constitutional law announced by the Supreme Court in *Johnson* and *United States v. Davis*, 139

1

S. Ct. 2319 (2019).[1] *See Welch v. United States*, 578 U.S. 120, 135 (2016) (holding *Johnson* is a new rule of substantive constitutional law that applies retroactively); *In re Thomas*, 988 F.3d 783, 790 (4th Cir. 2021) ("*Davis* announced a new substantive rule of constitutional law that has been made retroactive to cases on collateral review by the Supreme Court and that was previously unavailable."). Thus, Mr. Jackson's claim is based on "(1) [] a new rule of constitutional law (2) made retroactive to cases on collateral review (3) by the Supreme Court (4) that was previously unavailable." *Thomas*, 988 F.3d at 788.

Under the Antiterrorism and Effective Death Penalty Act of 1996, prisoners in federal custody may file a second or successive motion to vacate, set aside, or correct their sentence if they bring a claim that relies on, inter alia, a "new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. § 2255(h)(2). The statute further provides that any such claim must be raised within one year of the Supreme Court's announcement of the rule. *See* § 2255(f). Such claims need not be raised at trial or on direct appeal, since the one-year period of limitation for filing such a § 2255 motion only begins on the later of two dates: (1) when the Supreme Court

---

[1] In *Davis*, the Supreme Court held that the rule from *Johnson* applies to 18 U.S.C. § 924(c), the statute underlying Mr. Jackson's conviction.

2

recognizes the new rule of constitutional law, or (2) when the judgment of conviction becomes final. *See* § 2255(f) ("A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the *latest* of . . . (1) the date on which the judgment of conviction becomes final; [or] . . . (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review . . . ") (emphasis added).[2] Thus, § 2255 explicitly establishes that claims based on retroactive new rules of constitutional law are not required to be raised before judgment becomes final (i.e., at trial or on direct appeal), but may be raised for the first time well after conviction.

Mr. Jackson filed such an application pursuant to 28 U.S.C. § 2255(h)(2) within a year of the Supreme Court's establishment of a new rule of constitutional law in *Johnson*. This Court authorized him to proceed on that claim. The Government's argument that this claim is defaulted is inconsistent with the statute authorizing such claims and would render the words "new," "retroactive," and "previously unavailable" meaningless, in violation of the statute's plain language.

---

[2] The "date on which the judgment of conviction becomes final" for purposes of § 2255(f)(1) is when the Court resolves a petition for writ of certiorari on direct appeal of the conviction, or when the time for filing such a petition expires. *See Clay v. United States*, 537 U.S. 522, 527 (2003); *United States v. Segers*, 271 F.3d 181, 186 (4th Cir. 2001).

The Government cites no authority for its argument beyond *Bousley v. United States*, 523 U.S. 614 (1998). *Bousley* is inapplicable here. *Bousley* analyzed the application of *Bailey v. United States*, 516 U.S. 137 (1995), a case that did not announce a new rule of constitutional law. 523 U.S. at 620 ("The only constitutional claim made here is that petitioner's guilty plea was not knowing and intelligent. There is surely nothing new about this principle . . . ."). The Court's finding of procedural default in *Bousley* was in an entirely different context than here. *Bousley* simply did not address a "new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." § 2255(h)(2). *Johnson* (and *Davis*) are such rules.

There is no requirement in § 2255, or Supreme Court precedent, that Mr. Jackson was obligated to raise his current *Johnson* claim at trial or on direct appeal. Indeed, the petitioner in *Welch*, where the Supreme Court held that *Johnson* is retroactive, did not raise a *Johnson*-like vagueness challenge to the residual clause on direct appeal. *See United States v. Welch*, 683 F.3d 1304 (11th Cir. 2012). Nor did the petitioner in *Thomas* raise any *Johnson*- or *Davis*-like claim at trial or on direct appeal. *See Thomas*, 988 F.3d at 786-87 (noting petitioner pleaded guilty and did not appeal his conviction or sentence). Mr. Jackson's claim is properly raised and not procedurally defaulted.

4

**B.      There Is Cause and Prejudice and Actual Innocence to Excuse Any Possible Default.**

Even if his claim was procedurally defaulted, Mr. Jackson can establish cause and prejudice to excuse any such default because this claim was not previously reasonably available. In the context of a petitioner filing an initial § 2255 motion raising a *Johnson* claim more than one year after his judgment became final, this Court "reject[ed] the government's [] argument that [the petitioner]'s force clause argument is subject to procedural default because he failed to raise it on direct appeal," since "his argument (which depends on a favorable result on both the force clause and the residual clause) wasn't reasonably available before the change in law wrought by *Johnson*." *United States v. Bennerman*, 785 F. App'x 958, 963 (4th Cir. 2019) (unpublished). In so doing, this Court noted, "[o]ur sister circuits have entertained procedurally defaulted *Johnson* claims due to their previous unavailability, and we conclude that this approach is applicable here." *Id.* (citing *Lassend v. United States*, 898 F.3d 115, 122-23 (1st Cir. 2018), *Cross v. United States*, 892 F.3d 288, 294-96 (7th Cir. 2018), and *United States v. Snyder*, 871 F.3d 1122, 1127 (10th Cir. 2017)).

Mr. Jackson establishes cause because his "2255 motion raises a new, previously unavailable claim under *Johnson*" and "this is sufficient to clear the statute of limitations bar and related procedural hurdles, including the law of the case and procedural default." *Bennerman*, 785 F. App'x at 963. Mr. Jackson

5

establishes prejudice because his claim is meritorious. The prejudice here is especially evident because the sole charge in the indictment would be invalidated if Mr. Jackson succeeds on the merits.

Alternatively, Mr. Jackson's actual innocence excuses any procedural default because none of the predicate offenses qualify as crimes of violence as charged under § 924(c). *United States v. Adams*, 814 F.3d 178, 183 (4th Cir. 2016) (petitioner was actually innocent of his felon-in-possession conviction because intervening circuit precedent established that he was no longer a felon); *United States v. Reece*, 938 F.3d 630, 634 n.3 (5th Cir. 2019) (procedural default excused because petitioner was actually innocent of § 924(c) charge when underlying predicate was not crime of violence post-*Davis*); *United States v. Bowen*, 936 F.3d 1091, 1097 n.2 (10th Cir. 2019) (parties agreed that petitioner was actually innocent of § 924(c) charge when underlying predicate was not crime of violence post-*Davis*). Because the Government cannot prove all of the elements of the sole § 924(c) charge in the indictment, Mr. Jackson is actually innocent of the crime for which he was charged and convicted thus excusing any default.

II.   **FEDERAL MURDER IS NOT A CRIME OF VIOLENCE UNDER THE FORCE CLAUSE OF 18 U.S.C. § 924(C)(3).**

    A.   **Federal First-Degree Murder is Not a Crime of Violence under the Force Clause of 18 U.S.C. § 924(C)(3) Because it is an Indivisible Offense that Can Be Committed by Felony Murder Which Requires No More than an Accidental Killing.**

        1.   **Federal First-Degree Murder is a Single Indivisible Offense.**

In arguing that federal murder requires a mens rea sufficient to qualify under the force clause, the Government first focuses solely on "[f]ederal 'first-degree premeditated murder.'" *Response* at 18. But this focus on premeditated murder is misplaced. As detailed below, Supreme Court precedent establishes that both premeditated murder and felony murder are different means of committing the same offense of first-degree murder. The least serious conduct criminalized under first-degree murder is felony murder, which can be committed by an accidental killing. *See Brief* at 17-18. The Government does not dispute this. Nor does the Government dispute that felony murder fails to qualify as a crime of violence after *Borden v. United States*, 141 S. Ct. 1817 (2021), under which an offense with a mens rea of recklessness or less is not a § 924(c) crime of violence.

Instead, the Government argues that premeditated murder and felony murder are not "merely alternative means of committing the same offense" but "alternative *elements* creating multiple versions of the crime." *Response* at 28 (quotations and citations omitted); *see id.* at 28-36. Thus, the Government contends that "[f]irst-

7

degree premeditated murder is a different offense with different elements from felony murder," *id.* at 35, so that this Court may apply the modified categorical approach to the federal murder predicate offense for Mr. Jackson's § 924(c) conviction.

The Government's argument is foreclosed by Supreme Court precedent. *See Schad v. Arizona*, 501 U.S. 624 (1991) (plurality op.). *Schad* recognized that premeditated and felony murder are two separate ways of committing the same crime of first-degree murder. *Schad* upheld an Arizona first-degree murder conviction based on a "general verdict predicated on the possibility of combining findings of what can best be described as alternative mental states, the one being premeditation, the other the intent required for murder combined with the commission of an independently culpable felony." *Id.* at 632. The Court noted that "[a]t common law, murder was defined as the unlawful killing of another human being with 'malice aforethought.'" *Id.* at 640. Many states (like the federal government) "have in most cases retained premeditated murder and some form of felony murder . . . as alternative *means* of satisfying the mental state that first-degree murder presupposes." *Id.* at 641.[3]

---

[3] Like the Arizona statute at issue in *Schad*, federal murder under § 1111(a) "is identical in all relevant respects to the language of the first statute defining murder by differences of degree, passed by the Pennsylvania Legislature in 1794." *Id.*

The Court then listed eleven state court decisions that agreed (and only one that disagreed) with this common law definition of murder and the principle that "'it was not necessary that all the jurors should agree in the determination that there was a deliberate and premeditated design to take the life of the deceased, or in the conclusion that the defendant was at the time engaged in the commission of a felony, or an attempt to commit one; it was sufficient that each juror was convinced beyond a reasonable doubt that the defendant had committed the crime of murder in the first degree as that offense is defined by the statute.'" *Id.* (quoting *People v. Sullivan*, 65 N.E. 989, 989-90 (N.Y. 1903)); *see also id.* at 641-42 (collecting cases). The Court noted that "Arizona's equation of the mental states of premeditated murder and felony murder as species of the blameworthy state of mind required to prove a *single offense* of first-degree murder finds substantial historical and contemporary echoes." *Id.* at 640 (emphasis added).

Thus, under common law and the law of most states, "neither premeditation nor the commission of a felony is formally an *independent element* of first-degree murder; they are treated as mere means of satisfying a mens rea element of high culpability." *Id.* at 639 (emphasis added).

The Court did note that "if . . . two mental states are supposed to be equivalent means to satisfy the mens rea element of a single offense, they must reasonably reflect notions of equivalent blameworthiness or culpability, whereas a

9

difference in their perceived degrees of culpability would be a reason to conclude that they identified different offenses altogether," *id.* at 643. Nevertheless, the Court held with regard to premeditated and felony murder that "it is clear that such equivalence could reasonably be found, which is enough to rule out the argument that this moral disparity bars treating them as alternative means to satisfy the mental element of a single offense," *id.* at 644.

The text and structure of the federal murder statute provides additional support. Congress defined second-degree murder as a distinct, divisible offense from first-degree murder. It is defined in a separate sentence, identified as a separate degree, and assigned a different punishment. § 1111(a) & (b). The four different means of committing first-degree murder, by contrast, are set out in a single sentence defining first-degree murder, with no separate designations and no difference in punishment. The text and structure defining first- and second-degree murder separately, but not further separating the means of committing first-degree murder, demonstrates that first-degree murder is a single indivisible offense.

Because premeditation and felony murder are different means of proving the single offense of first-degree murder, federal first-degree murder is a single indivisible offense. *See, e.g.*, *United States v. Mathis*, 932 F.3d 242, 267 (4th Cir. 2019) ("Although the statute describes various ways that an individual may commit the act of kidnapping, namely, by force, intimidation, or deception, these

10

alternatives represent various means of committing the crime, not alternative elements of the crime."); *United States v. Fuertes*, 805 F.3d 485, 498 (4th Cir. 2015) ("Accordingly, although § 1591(a) refers to alternative *means* of commission, it contains a single, indivisible set of *elements*, and the categorical approach applies.") (emphasis in original). And a "statute is indivisible when 'the jury need not agree on anything past the fact that the statute was violated.'" *Fuertes*, 805 F.3d at 498 (quoting *Rendon v. Holder*, 764 F.3d 1077, 1085 (9th Cir.2014)).

Because federal first-degree murder is a single indivisible offense, the modified categorical approach does not apply here.[4] As the Government notes, *Response* at 27, the modified categorical approach only applies when a statute is "divisible," that is, when it "lists potential offense *elements* in the alternative, and thus includes multiple alternative versions of the crime." *United States v. Roof*, 10 F.4th 398-99 (4th Cir. 2021).

The Government's argument that the disjunctive phrasing of the federal murder statute is indicative of divisibility, *Response* at 29-30, is contrary to the Supreme Court's recognition that a statute is not divisible merely because it lists

---

[4] The modified categorical approach allows the Court to look at certain documents from the trial record, including verdict forms, to determine what version of a crime from a divisible statute served as the basis of a conviction. *Shepard v. United States*, 544 U.S. 13, 21-23 (2005).

means of committing an offense disjunctively. *Mathis v. United States*, 136 S. Ct. 2243, 2253 (2016) ("Whether or not mentioned in a statute's text, alternative factual scenarios remain just that . . . a statute's listing of disjunctive means does nothing to mitigate the possible unfairness of basing an increased penalty on something not legally necessary to a prior conviction.").

The Government is also mistaken that court decisions indicate that federal first-degree murder is divisible. *Response* at 30-31. The Government does not cite to a single case that addresses the issue of whether federal first-degree murder under § 1111(a) is divisible and ignores the Supreme Court's holding in *Schad*. Similarly, pattern jury instructions from other circuits and the fact that sometimes juries are only instructed on one means of committing first-degree murder (an entirely unsurprising fact), *Response* at 31-33, do not trump the Supreme Court's holding in *Schad*.

Moreover, despite the Government's arguments to the contrary, *Response* at 33-34, the behavior underlying premeditated and felony murder does not differ in any significant way. The significant behavior of each is the unlawful killing of another human being, and the Supreme Court in *Schad* recognized that the means of committing such a killing by premeditated or felony murder "reasonably reflect notions of equivalent blameworthiness or culpability." 501 U.S. at 643.

Finally, as detailed more fully below, the indictment and verdict sheets certainly do not "speak plainly" on the question of divisibility. *See Mathis*, 136 S. Ct. at 2257 (citing *Shepard*, 544 U.S. at 21). Indeed, if anything, these documents only further support that first-degree murder is indivisible.

The Supreme Court's reasoning in *Schad* as well as the text and structure of the statute, establishes that first-degree murder is a single indivisible offense. The Government's arguments to the contrary are unpersuasive. To the extent that any uncertainty remains about whether first degree murder is indivisible, this Court must find that the offense is indivisible. *See United States v. Cantu*, 964 F.3d 924, 929 (10th Cir. 2020) (citing *Mathis,* 136 S. Ct. at 2257) ("If, however, we cannot ultimately say with certainty that the statute is divisible, we will not apply the modified-categorical approach").

> **2.     Federal First-Degree Murder Does Not Require the Mens Rea or Violent Physical Force Necessary of a Crime of Violence.**

As detailed in Mr. Jackson's opening brief, first-degree murder is not a crime of violence under the force clause because it does not categorically require the requisite means rea or use of violent physical force. *See Brief* at 11-20.

The Government cites to three unpublished opinions of this Court to argue that this Court has held that first-degree murder's element of malice aforethought will always meet the mens rea requirements of the force clause. *Response* at 19-20

13

& n.2. However, none of these cases address federal first-degree murder or the arguments raised now by Mr. Jackson. *See United States v. Parrish*, 767 F. App'x 440, 442-43 (4th Cir. 2019) (unpublished) (second-degree murder in North Carolina is a crime of violence); *United States v. Bell*, 704 F. App'x 297, 298 (4th Cir. 2017) (same); *United States v. Lee*, 697 F. App'x 175, 176 (4th Cir. 2017) (unpublished) (same).

The Government does not contest that a defendant's intent to commit the underlying felony can satisfy the element of malice aforethought for federal murder, and thus reckless and even accidental killings committed during felonies are covered by first-degree murder. *See United States v. Morales–Machuca*, 546 F.3d 13, 22 (1st Cir. 2008) ("18 U.S.C. § 1111 was intended to adopt the felony murder rule, and for a stated felony the malice element is satisfied by the intent to commit the unlawful felony") (internal quotation marks omitted); *see also United States v. Campbell*, 669 F. App'x 169, 170 (4th Cir. 2016) ("Thus, a defendant commits first degree murder if the killing was either premeditated or committed during the course of a felony, such as robbery.") (citing and quoting *Morales–Machuca*, *supra*).

The Government also relies on this Court's holdings in *In re Irby*, 858 F.3d 231 (4th Cir. 2017), and *Mathis*, 932 F.3d 242. *Response* at 17-18. Neither *Irby* nor *Mathis* addressed the felony murder issues raised here. The Court in *Irby* held that

14

second-degree retaliatory murder is a crime of violence under § 924(c)'s force clause, rejecting the argument that the crime could be committed by means of indirect rather than direct force in light of the Supreme Court's opinion in *United States v. Castleman*, 572 U.S. 157 (2014). *Irby*, 858 F.3d at 236. The *Irby* Court noted that "[c]ommon sense dictates that murder is categorically a crime of violence under the force clause." *Id.* at 237 (quoting *United States v. Alfaro*, 835 F.3d 470, 478 (4th Cir. 2016)). Yet the Court held only that the use of *indirect* force was sufficient to establish the force necessary to qualify second-degree retaliatory murder as a crime of violence. *Irby*, 856 F.3d at 234-36. In *Mathis*, the Court cited *Irby* to reach the same result. *Mathis*, 932 F.3d at 265. Mr. Jackson has not raised those arguments but has focused on definitions of felony murder here that were not at issue in *Irby* and *Mathis*. Thus, those cases are not controlling.

Neither this Court nor the Supreme Court have ever addressed whether federal first-degree murder is a crime of violence. Nevertheless, the Government claims that "this Court's precedent forecloses Jackson's argument that first-degree premeditated murder is not a crime of violence because its defining statute, § 1111(a), also prohibits felony murder." *Response* at 21. This argument is mistaken for two reasons.

First, the relevant question is not whether first-degree murder with premeditation is a crime of violence under the force clause. Rather, the key

15

question is whether felony murder, which is included in § 1111(a) as alternative means of committing the single indivisible offense of first-degree murder, is a crime of violence. If felony murder does not meet that definition, then first-degree murder is not a crime of violence.

Second, the Government again just cites *Irby* and cases relying on that decision as the precedent of this Court foreclosing Mr. Jackson's current arguments. *See* Response at 21-25. None of these cases address whether first-degree murder is a crime of violence for purposes of § 924(c). And these decisions are not binding because "under our adversarial system of justice, an unchallenged and untested assumption is simply not a holding that binds future courts." *United States v. Norman*, 935 F.3d 232, 241 (4th Cir. 2019). That is, "courts often decide 'particular legal issues while assuming without deciding the validity of antecedent propositions, and such assumptions . . . are not binding in future cases that directly raise the questions.'" *Id.* (quoting *United States v. Verdugo-Urquidez*, 494 U.S. 259, 272 (1990)).

In sum, none of the cases cited by the Government address the fact that federal first-degree murder can be accomplished by the commission of an underlying felony resulting in accidental death, which means that federal first-degree murder does not categorically require either (1) the mens rea or (2) the

16

violent physical force necessary to qualify as a crime of violence under the force clause.

Repeatedly characterizing murder as a "quintessential crime of violence," the Government asks this Court to use "common sense" to find that federal first-degree murder is a crime of violence. *Response* at 21-25. Whether federal first-degree murder categorically qualifies as a crime of violence is not a question of common sense, but statutory interpretation. And the only remaining statutory definition under which federal first-degree murder can qualify as a crime of violence for Mr. Jackson's § 924(c) conviction here is the force clause of § 924(c)(3)(A).

The result may be counter-intuitive, but it is not absurd – Congress defined first-degree murder to encompass felony murder, even though felony murder does not require the intentional use of violent physical force required of the force clause. Congress could have defined first-degree murder more narrowly, but it chose not to, and this Court is bound by that choice. This result is not illogical – to the contrary, it is compelled by the logical application of precedent from the Supreme Court and this Court to the statute at issue.

### B. Even under the Modified Categorical Approach, Mr. Jackson is Entitled to Relief.

Even if the modified categorical approach applies, Mr. Jackson is still entitled to relief. Under the modified categorical approach, a court cannot find that

17

a defendant committed an offense defined by § 924(c) unless the *Shepard* documents establish with "certainty" that the defendant was "necessarily" convicted of elements constituting a "crime of violence" under § 924(c). . " *Shephard*, 544 U.S. at 21-22, 23. "[P]lausibility or even likelihood" that the defendant was convicted of elements constituting a "crime of violence" will not suffice. *United States v. Clay*, 627 F.3d 959, 967 (4th Cir. 2010). Under this demand for certainty, when the *Shepard* documents do not establish the elements of which a defendant was "necessarily" convicted, the court must assume that the defendant was convicted of the "least serious" of the disjunctive elements of the relevant statute. *United States v. Chapman*, 666 F.3d 220, 227 (4th Cir. 2012) (en banc).

Applying this law here, the Government has failed to meet this burden because the available *Shepard* documents do not prove with certainty that the § 924(c) predicate upon which Mr. Jackson was necessarily convicted was premeditated murder. In fact, these documents are silent as to which type of first-degree murder—premeditated or felony murder—necessarily served as the basis for the § 924(c) predicate crime of violence. That is, the Government's claim that "[t]he indictment and verdict form unequivocally establish that the jury convicted Jackson of first-degree murder 'with premeditation,'" *Response* at 27, is incorrect.

First, the indictment in this case only alleged "Murder [Title 18 United States Code, Section 1111(a)]" as a predicate crime of violence for§ 924(c), without specifying first-degree murder and felony first-degree murder as separate predicate crimes of violence. JA0158. The indictment's further definition of murder also did not distinguish premeditated and felony murder as separate offenses, but as separate means of committing the single offense of murder: "murder as defined in Title 18 United States Code, Section 1111, in that Richard Allen Jackson unlawfully killed a human being, Karen Styles, with malice aforethought, by shooting her with the firearm willfully, deliberately, maliciously, and with premeditation, and in the perpetration and attempted perpetration of a felony, to wit: kidnapping and aggravated sexual abuse." JA0159.

The verdict sheet similarly establishes that the underlying crime of violence found by the jury for the § 924(c) conviction was the single offense of murder, with the jury finding that Mr. Jackson "committed the crime of the murder of Karen Styles" as an underlying "crime[] of violence." *Verdict Sheet* at 1. Only after finding Mr. Jackson guilty of § 924(c), and when deciding whether Mr. Jackson was guilty of the additional elements of § 924(j), did the jury further find that Mr. Jackson committed this murder with premeditation as well as in the furtherance of the felonies of kidnaping and aggravated sexual abuse. *Verdict Sheet* at 2.

Thus, the indictment and verdict sheets fail to conclusively establish that the § 924(c) predicate was necessarily premeditated murder to the exclusion of felony murder. *Verdict Sheet* at 1. Even the verdict sheet related to the § 924(j) element does not describe the specific findings as different offenses, but instead "one or more of the following ways of committing murder." *Verdict Sheet* at 2. The fact that the jury found three different ways (i.e., means) of committing murder when evaluating the § 924(j) finding does not change the fact that the predicate crime of violence for the § 924(c) offense (a finding necessary before moving on to any finding relating to the § 924(j) violation) was solely federal murder under § 1111(a) without further specification.

Consequently, even if the modified categorical approach applied here, the indictment and verdict sheets here do not establish with the necessary certainty that Mr. Jackson's § 924(c) conviction is predicated on premeditated first-degree murder. Instead, this Court must assume the crime of violence element of § 924(c) was satisfied based on the least serious version of the two predicates, felony murder, an offense that no one disputes fails to qualify as a crime of violence. Even under the modified categorical approach, Mr. Jackson is entitled to relief from his conviction under § 924(c) & (j).

20

**III.    AGGRAVATED SEXUAL ABUSE IS NOT A CRIME OF VIOLENCE UNDER THE FORCE CLAUSE OF 18 U.S.C. § 924(C)(3).**

Aggravated sexual abuse is not a crime of violence under the force clause because it does not categorically require the use of violent physical force. Aggravated sexual abuse requires two elements: (1) "causing another person to engage in a sexual act" (2) "by using force against that person or by threatening or placing that person in fear that any person will be subjected to death, serious bodily injury, or kidnapping within the special territorial jurisdiction of the United States or attempting to do so." 18 U.S.C. § 2241(a). As Mr. Jackson has argued, *Brief* at 23-32, there are many ways in which these elements can be satisfied without the use of violent physical force. The Government's arguments to the contrary ignore the least serious conduct encompassed under the elements of the offense.

The Government argues that every "sexual act" under § 2241(a) requires "force capable of causing physical pain or injury to another to another person." *Response* at 38 (quoting *United States v. Hammond*, 912 F.3d 658, 661 (4th Cir. 2019)). Relying on the Supreme Court's holding in *Stokeling v. United States*, 139 S. Ct. 554 (2019), the Government argues that "[e]ach of the four statutorily proscribed sex acts [in § 2246(2)(A)-(D)] involves a 'potentiality' for 'physical pain or injury.'" *Response* at 39 (quoting *Stokeling*, 139 S. Ct. at 554). The Supreme Court's discussion of "potentiality" in *Stokeling* only reaffirmed its earlier holding that the violent physical force required of the force clause must be

21

"'force *capable* of causing physical pain or injury." *Stokeling*, 139 S. Ct. at 554 (quoting *Johnson v. United States*, 559 U.S. 133, 140 (2010)) (emphasis added in *Stokeling*). After *Stokeling*, an offense must still *categorically* require violent physical force capable of causing physical pain or injury. As detailed in the opening brief, this Court has held, as have other circuits, that sexual acts such as those listed in § 2246(2)(A)-(D) simply do not require such force. *See, e.g.*, *United States v. Leshen*, 453 F. App'x 408, 412-13 (4th Cir. 2011) (unpublished).

Indeed, this Court has held that second-degree rape in North Carolina, an offense requiring vaginal intercourse (well beyond the de minimis touching involved here), is a "sex offense[] that do[es] not require the use of physical force" and falls outside the ambit of the force clause. *United States v. Shell*, 789 F.3d 335, 341-42 (4th Cir. 2015); *see also Cole v. United States*, 842 F. App'x 400 (11th Cir. 2021) (unpublished) (holding, after *Stokeling*, Alabama first-degree rape is not a crime of violence because it can be committed by slight penetration). A sexual act under the federal aggravated sexual abuse statute, which can be committed by the even lesser act of mere contact or intentional touching, is likewise not a crime of violence. *See* 18 U.S.C. § 2246(2)

As discussed in the opening brief, *Brief* at 29-33, the second element of aggravated sexual abuse can be committed in numerous ways that do not amount to the use, attempted use, or threat of violent physical force against the person of

22

another – for example by mental coercion or threatening to kidnap or threatening to harm oneself. The Government does not dispute that this element can be committed without violent physical force. Instead, the Government claims that when the sexual act element is combined with this second element, no realistic probability exists that one could commit aggravated sexual abuse with de minimis force. *Response* at 39-42. But the realistic probability test does not apply whenever the plain terms of the statute or case law interpreting the statute make clear that the statute criminalizes conduct that does not satisfy the force clause. *See Gordon v. Barr*, 965 F.3d 252 (4th Cir. 2020); *United States v. Aparicio-Soria*, 740 F.3d 152 (4th Cir. 2014) (en banc). Here, the plain terms of § 2241(a) as well as case law interpreting the statute make clear that the statute can be violated by non-violent force. *Brief* at 27-33.

## IV.    THE CONSTITUTIONAL ERROR IS NOT HARMLESS.

The Government contends that any error claimed here would be harmless because Mr. Jackson's conviction necessarily included findings by the jury that Mr. Jackson committed the underlying federal offenses of murder, kidnapping, and aggravated sexual abuse. *Response* at 44-45. But Mr. Jackson was not indicted separately with these predicate offenses, and he was not convicted of any offense

23

other than the single conviction of violating 18 U.S.C § 924(c).[5] Because the government did not charge Mr. Jackson under § 1111(a), and the jury consequently did not convict him under that statute, the Government's harmless error theory is inapplicable. If none of the underlying predicate offenses constitute a crime of violence, Mr. Jackson's sole conviction would be invalid.

The Government argues that *had* murder and kidnapping been charged not as crimes of violence but "directly," then the jury surely *would* have found him guilty of these capital offenses and sentenced him to death based on the same evidence. However, this is speculative and not what occurred. The Government could have sought an indictment from a grand jury for other charges but elected not to do so. The Government's speculation as to what a grand jury *may* have indicted and what a jury of Mr. Jackson's peers *may* have found does not meet any legal standards. *Ex parte Bain*, 121 U.S. 1, 10 (1887) ("If it lies within the province of a court to change the charging part of an indictment to suit its own notions of what it ought to have been, or what the grand jury would probably have made it if

---

[5] *Compare United States v. Higgs,* 353 F. 3d 281, 289 (4th Cir. 2003), where the Government charged the defendant with separate counts of premeditated and felony murder, as well as counts under § 924(c). The Government received convictions on all counts and death sentences under the premeditated and felony murder counts. Here, by contrast, the government created the questions at issue here, by charging Mr. Jackson only under § 924(c). The Government cannot use harmless error to avoid the consequences of its charging decisions.

24

their attention had been called to suggested changes, the great importance" of the grand jury right would be "almost destroyed").

The Fifth Amendment to the United States Constitution provides: "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury. . . ," and "'guarantees that a criminal defendant will be tried only on charges in a grand jury indictment.'" *United States v. Randall*, 171 F.3d 195, 203 (4th Cir. 1999). Here, Mr. Jackson is not simply alleging that an error occurred at trial, rather, Mr. Jackson argues that the only crime for which he was charged and convicted is invalid.

The Government further argues that the "error that Jackson alleges would have required only slightly different allegations in the indictment." *Response* at 45. This argument favors Mr. Jackson because it acknowledges that to find this error harmless would require an amendment of the indictment. Such a "constructive amendment of the indictment constitutes error *per se*" and "requires a reviewing court to conclusively presume that the defendant has been prejudiced by the constructive amendment and to forgo harmless error analysis." *United States v. Floresca*, 38 F.3d 706, 711 (4th Cir. 1994). As the Supreme Court has long noted, "after an indictment has been returned its charges may not be broadened through amendment except by the grand jury itself." *Stirone v. United States*, 361 U.S. 212, 215-16 (1960).

25

Finding harmless error would require finding Mr. Jackson guilty of offenses that he had not been charged with in the indictment. The Supreme Court recognizes that this affects a "defendant's substantial right to be tried only on charges presented in an indictment returned by a grand jury" and that "[d]eprivation of such a basic right is far too serious to be treated as nothing more than a variance and then dismissed as harmless error." *Stirone*, 361 U.S. at 216.

This Court cannot now hypothesize a guilty verdict that was not in fact rendered as part of any harmless error analysis. *See Sullivan v. Louisiana*, 508 U.S. 275, 279 (1996) ("[T]o hypothesize a guilty verdict that was never in fact rendered—no matter how inescapable the findings to support that verdict might be—would violate the jury-trial guarantee."). To find the error harmless in this case would require even more structural error.

The Government fails to support its harmless error argument with relevant authority. In fact, this Court has never found a *Davis* error based on a § 924( c) conviction harmless when the conviction was solely based on underlying offenses that no longer qualify as crimes of violence. Rather, this Court has found the error harmful and vacated the § 924(c) conviction when the crime of violence element could not be satisfied post-*Davis*. *See United States v. Simms*, 914 F.3d 229 (4th Cir. 2019); *United States v. Simmons,* 11 F.4th 239 (4th Cir. 2021).

26

## V.    MR. JACKSON REQUESTS THE APPROPRIATE REMEDY.

Finally, the Government argues that the district court should be afforded an opportunity to fashion the appropriate remedy in the first instance, namely entering judgment against Mr. Jackson on a first-degree murder offense of which he was never charged, convicted, or sentenced. *Response* at 46-49. This is improper for the reasons already discussed above.

Relying on *Silvers v. United States*, 90 F.3d 95 (4th Cir. 1996), and *Rutledge v. United States*, 517 U.S. 292 (1996), the Government argues that this Court should allow the district court to enter a judgment of first-degree murder against Mr. Jackson if this Court finds a prejudicial defect. *Response* at 47. In those cases, the defendant was originally charged with, and the jury made findings of guilt on, the lesser included offense, charges the district court vacated only because the lesser included merged with the greater offense. When vacating the greater conviction, the appellate court reinstated the prior convictions that had been entered by the jury. In contrast, Mr. Jackson was never separately charged with, or convicted in district court of, murder, aggravated sexual abuse, or kidnapping, and thus, there are no convictions to reinstate. *Rutledge* and *Silvers* are inapposite.

The Government made a decision to charge Mr. Jackson with a single crime of using a firearm during a crime of violence under § 924(c), and that single

27

conviction is now unconstitutional. The appropriate remedy is for this Court to reverse the district court's order and vacate Mr. Jackson's § 924(c) conviction.

## CONCLUSION

Appellant Richard Jackson respectfully requests that the Court vacate his conviction.

Respectfully submitted,

*/s/Andrew Childers*
Shawn Nolan
Andrew Childers
Federal Community Defender
  for the Eastern District
  of Pennsylvania
601 Walnut Street, Suite 545W
Philadelphia, PA 19106
(215) 928-0520
andrew_childers@fd.org

Dated: January 20, 2022

28

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS**

This brief complies with Rule 32(a) of the Federal Rules of Appellate Procedure because the brief contains 6,437 words, excluding the parts of the brief exempted by Rule 32(f), and has been prepared in a proportionally spaced typeface using Microsoft Word, in fourteen-point Times New Roman font.

*/s/Andrew Childers*
Andrew Childers