No. 20-9

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

---

**RICHARD ALLEN JACKSON,**
**Appellant,**

**v.**

**UNITED STATES OF AMERICA,**
**Appellee.**

---

## PETITION FOR REHEARING EN BANC

---

**On Appeal from the United States District Court**
**for the Western District of North Carolina (No. 1:16-cv-212-MR)**

Shawn Nolan
Andrew Childers
Federal Community Defender for
 the Eastern District of Pennsylvania
601 Walnut Street, Suite 545 West
Philadelphia, PA 19106
(215) 928-0520
andrew_childers@fd.org

June 3, 2022

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................. ii

STATEMENT OF PURPOSE PURSUANT TO LOCAL RULE 40(B) .................. 1

ARGUMENT .................................................................................................... 2

I.    The Panel's Decision Is in Conflict with *Schad v. Arizona,* as well as the Common Law and Historical Origins of the Federal First-Degree Murder Statute. ...................................................................................................... 4

    A.    Conflict with Justice Scalia's Concurrence in *Schad v. Arizona*. ......... 5

    B.    Conflict with the *Schad* Plurality. ...................................................... 6

    C.    Conflict with the Common Law. ......................................................... 7

II.    The Panel's Decision Conflicts with *Mathis v. United States* ...................... 9

    A.    The Panel Failed to Apply the Categorical Approach as Required by *Mathis*. ...................................................................................... 9

    B.    *Mathis* Is Clear that the Use of the Disjunctive in the First-Degree Murder Statute Is Immaterial to the Divisibility Analysis. ................ 10

    C.    Under *Mathis* and *Schad,* the Fact that Premeditated and Felony Murder Involve Different Types of Conduct Does Not Control the Divisibility Analysis. ...................................................................... 11

    D.    The Panel Misused the Record Materials under *Mathis*. .................... 12

        1.    The indictment. .......................................................................... 13

        2.    The jury instructions. ................................................................. 13

        3.    The verdict sheets. ..................................................................... 14

III.    The Panel's Decision May Have a Substantial Impact on Past and Future Prosecutions. ...................................................................................... 15

CONCLUSION ............................................................................................... 17

i

# TABLE OF AUTHORITIES

**Federal Cases**

*Descamps v. United States*, 570 U.S. 254 (2013) .................................................. 12

*Borden v. United States*, 141 S. Ct. 1817 (2021) .................................................. 3

*Johnson v. United States*, 576 U.S. 591 (2015) .................................................. 2

*Mathis v. United States*, 579 U.S. 500 (2016) ................................................ *passim*

*Omargharib v. Holder*, 775 F.3d 192 (4th Cir. 2014) .......................................... 11

*Schad v. Arizona*, 501 U.S. 624 (1991) ........................................................ *passim*

*United States v. Allred*, 942 F.3d 641 (4th Cir. 2019) .......................................... 10

*United States v. Cantu*, 964 F.3d 924 (10th Cir. 2020) .......................................... 9

*United States v. Davis*, 139 S. Ct. 2319 (2019) ....................................................... 3

*United States v. Hope*, 28 F.4th 487 (4th Cir. 2022) .............................................. 9

*United States v. Jackson*, 32 F.4th 278 (4h Cir. 2022) ................................. *passim*

*United States v. Lobaton-Andrade*, 861 F.3d 538 (5th Cir. 2017) ........................ 10

*United States v. Nguyen*, 155 F.3d 1219 (10th Cir. 1998) ...................................... 7

*United States v. Thomas*, 34 F.3d 44 (2d Cir. 1994) .............................................. 7

**Federal Statutes**

18 U.S.C. § 924 .......................................................................................... 1, 2

18 U.S.C. § 1111 .....................................................................................*passim*

**State Cases**

*People v. Sullivan*, 65 N.E. 989 (N.Y. 1903)........................................................ 8

**Other**

Eric Wm. Ruschky, *Pattern Jury Instructions for Federal Criminal Cases, District of South Carolina* (2020 Online Edition). ........................................................ 16

**STATEMENT OF PURPOSE PURSUANT TO LOCAL RULE 40(B)**

The question in this case is whether federal first-degree murder under 18 U.S.C. § 1111(a) is a crime of violence within the meaning of the force clause of 18 U.S.C. § 924(c)(3)(A). That question, in turn, depends upon whether the statute is indivisible. If so, it is not a crime of violence because it includes felony murder, a crime that can be committed accidentally or recklessly. *See United States v. Jackson,* 32 F.4th 278, 285 (4th Cir. 2022). The panel, however, held that the statute was divisible.

In counsel's judgment, the panel's opinion is in conflict with *Schad v. Arizona*, 501 U.S. 624 (1991), and *Mathis v. United States*, 579 U.S. 500 (2016), both of which support the conclusion that the statute is indivisible. The panel's failure to follow these decisions led to a material legal matter being overlooked in the decision, namely the proper application of *Schad* and *Mathis* to the question of whether federal first-degree murder is a crime of violence within the meaning of the force clause

This issue is one of first impression and is of exceptional importance. By interpreting the federal first-degree statute to establish premeditated and felony murder as separate offenses, the panel narrows the scope and application of the statute in ways that are inconsistent with common law and historical practices. These changes have significant implications for both past and future prosecutions.

1

Under this decision, federal prosecutors will not be able to secure a first-degree murder conviction when jurors cannot agree on the exact method of the killing, even though they all believe the defendant is guilty. And prisoners who were convicted without jury findings as to a specific form of murder may have a new basis to challenge their convictions.

Whether such changes should more appropriately be made by Congress is a question that highlights the importance of this case. Rehearing is appropriate.

## ARGUMENT

Congress has defined federal first-degree murder in very broad terms by including murders that were committed intentionally, such as premeditated murder, as well as killings that could be committed accidentally or recklessly, such as felony murder. *See* 18 U.S.C. §1111(a). Congress also broadly defined what is a "crime of violence," by including a narrow "elements or force" clause and a broad "residual clause." 18 U.S.C. § 924(c)(3). Under this scheme, there was no question that first-degree murder was a crime of violence even though it included some accidental or unintentional killings, because it readily met the requirements of the residual clause.

However, this broad Congressional scheme unraveled after the Supreme Court declared that the residual clause definition of crime of violence was unconstitutionally vague. *See Johnson v. United States*, 576 U.S. 591 (2015), and

2

*United States v. Davis,* 139 S. Ct. 2319 (2019). Now, a broadly written statute such as § 1111(a) could only be a crime of violence if it met the narrow definition of the force clause.

This created a dilemma. If federal first-degree murder were to continue to be a crime of violence, Congress would have to act to fix the problem. It should not be the court's job to rewrite the statute in order to meet the requirements of the force clause.

Justice Thomas recognized the dilemma arising from *Johnson* in *Borden v. United States*, 141 S. Ct. 1817, 1835 (2021) (Thomas, J., concurring in judgement). He explained that the job of resolving that dilemma properly belongs to Congress and not to the courts. He noted that it is the legislature's role to provide the general rules for the governance of society and that the alteration of rules in light of *Johnson* is "quintessentially legislative work." *Id.* at 1836.

The panel here, by contrast, did not leave this task to Congress. Instead, the panel decided it could narrow the scope and applicability of first-degree murder by finding that the statute was divisible and that premeditated murder and felony murder were separate and distinct elements of first-degree murder. *Jackson*, 32 F.4th at 286-87. Neither Congress nor any court had ever previously addressed the statute in that manner.

3

By choosing to rewrite the statute to turn premeditated and felony murder into separate offenses, the panel encroached upon Congress's role and violated the separation of powers. The panel's decision also created new burdens for the government. Now, the government is required to particularly charge a defendant with a specific form of murder and prove beyond a reasonable doubt to a unanimous jury that a defendant committed this specific form of first-degree murder.

In light of the importance and scope of the panel's decision, its inconsistency with Supreme Court precedent, and its impact on future murder prosecutions, *en banc* review is warranted.

## I.    THE PANEL'S DECISION IS IN CONFLICT WITH *SCHAD V. ARIZONA,* AS WELL AS THE COMMON LAW AND HISTORICAL ORIGINS OF THE FEDERAL FIRST-DEGREE MURDER STATUTE.

The panel properly recognized that the critical issue in this case is whether § 1111(a) is an indivisible statute (meaning premeditated murder and felony murder are only separate means of committing the single crime of first-degree murder) or a divisible statute (meaning premeditated murder and felony murder are two entirely different crimes). *Jackson*, 32 F. 4th at 285 ("We turn to the critical issues in this appeal: whether § 1111(a) is divisible . . .").

4

The panel conceded that "[i]f the statute is indivisible, [Mr. Jackson] is correct. . . . Felony murder cannot qualify as a 'crime of violence' because it requires only the mens rea necessary to attempt or complete the underlying felony (i.e., arson, escape, etc.). That mens rea is not more than recklessness and thus, does not satisfy *Borden*." *Id.*

The panel held that § 1111(a) is a divisible statute, so that premeditated first-degree murder and felony first-degree murder are distinct and different crimes. *Id.* at 285-86. Under this logic, premeditated and felony murder would have to be separately and specifically charged, and a jury would be required to unanimously find that the accused committed the specific form of murder charged. This holding is in conflict with *Schad*, *Mathis*, and the common law and historical origins of the federal murder statute.

### A.    Conflict with Justice Scalia's Concurrence in *Schad v. Arizona*.

*Schad* reviewed an Arizona murder statute and recognized that premeditated and felony murder are two different means of committing the single offense of first-degree murder. Justice Scalia, concurring, explicitly opined that the federal first-degree murder was the same. Justice Scalia observed, "down to the present time *the United States* and most States have a single crime of first-degree murder that can be committed by killing in the course of a robbery as well as premeditated killing." *Schad*, 501 U.S. at 649 (Scalia, J., concurring) (citing 18 U.S.C. § 1111).

5

(emphasis added). In his view, "Schad and the dissenting Justices would in effect have us abolish the crime of first-degree murder and declare that the Due Process Clause of the Fourteenth Amendment requires the subdivision of that crime into (at least) premeditated murder and felony murder." *Id*. Justice Scalia rejected that view: "it has long been the general rule that when a single crime can be committed in various ways, jurors need not agree upon the mode of commission." *Id.*

Justice Scalia offered a hypothetical to explain the purpose and importance of this reasoning:

> That rule is not only constitutional, it is probably indispensable in a system that requires a unanimous jury verdict to convict. When a woman's charred body has been found in a burned house, and there is ample evidence that the defendant set out to kill her, it would be absurd to set him free because six jurors believe he strangled her to death (and caused the fire accidentally in his hasty escape), while six others believe he left her unconscious and set the fire to kill her.

*Id.* at 649-50.

The panel ignored this reasoning and took the opposite view. The panel subdivided the single offense of federal first-degree murder into multiple separate offenses. Given the conflict with Justice Scalia's view of § 1111(a), rehearing is appropriate.

### B.    Conflict with the *Schad* Plurality.

The plurality in *Schad* likewise recognized that premeditated and felony murder are two separate means of committing the same crime of first-degree

6

murder. *Schad* upheld an Arizona first-degree murder conviction based on a "general verdict predicated on the possibility of combining findings of what can best be described as alternative mental states, the one being premeditation, the other the intent required for murder combined with the commission of an independently culpable felony." *Schad*, 501 U.S. at 632 (plurality op.).

Yet the panel here did not apply *Schad* to the federal statute. Instead, it followed the *Schad* dissent and subdivided first-degree murder into separate crimes. In a footnote, the panel dismissed *Schad* as having no relevance to the federal statute. *Jackson*, 32 F. 4th at 285 n.7.

*Schad* cannot be so readily dismissed. As Justice Scalia aptly recognized, the federal first-degree murder statute is the same type of statute, with the same type of common law origin, as the Arizona statute. Other circuits have recognized the application of *Schad* to federal first-degree murder. *See United States v. Nguyen*, 155 F.3d 1219, 1229 (10th Cir. 1998) (applying *Schad* to federal first-degree murder); *United States v. Thomas*, 34 F.3d 44 (2d Cir. 1994) (same). The panel's opinion conflicts with *Schad* and the sister circuits.

## C. Conflict with the Common Law.

*Schad* noted that "[a]t common law, murder was defined as the unlawful killing of another human being with 'malice aforethought.'" 501 U.S. at 640. Most state statutes (like the federal statute) follow that same approach. *Id.* at 641.

7

Under this common law approach, "'it was not necessary that all the jurors should agree" on whether there was a premeditated or felony murder; "it was sufficient that each juror was convinced beyond a reasonable doubt that the defendant had committed the crime of murder in the first degree as that offense is defined by the statute.'" *Id.* (quoting *People v. Sullivan*, 65 N.E. 989, 989-90 (N.Y. 1903)); *see also id.* at 641-42 (collecting cases). *Schad* recognized that, at common law, "neither premeditation nor the commission of a felony is formally an *independent element* of first-degree murder; they are treated as mere means of satisfying a mens rea element of high culpability." *Id.* at 639 (emphasis added). Thus, at common law, first-degree murder was a single indivisible offense.

The legislative history of the federal murder statute shows an intent to follow the common law. The law's drafters explicitly stated that the federal murder statute is based on "the common law definition [of murder], and is similar in terms to the statutes defining murder in a large majority of the States." Special Joint Comm. on the Revision of the Laws, Revision and Codification of the Laws, Etc., H.R. Rep. No. 2, 60th Cong., 1st Sess. 1-5 (1908).

Here, the panel offers no explanation for its deviation from the common law and historical roots of the federal first-degree murder statute. Rehearing is appropriate.

8

## II.    THE PANEL'S DECISION CONFLICTS WITH *MATHIS V. UNITED STATES*.

The panel's opinion is also in conflict with the Supreme Court's holding in

*Mathis*, 579 U.S. 500 (2016). Under *Mathis*, 579 U.S. at 519, if the law does not

"speak plainly" on whether an offense is divisible, a statute must be deemed

indivisible and "a sentencing judge will not be able to satisfy '[the] demand for

certainty' when determining whether a defendant was convicted of" a crime of

violence. *Id.* at 519. Thus, "unless we are certain that a statute's alternatives are

elements rather than means, the statute isn't divisible and we must eschew the

modified categorical approach." *United States v. Cantu*, 964 F.3d 924, 929 (10th

Cir. 2020) (citation omitted). "'[W]e need to insist on clear signals— that convince

us to a certainty that the elements are correct and support divisibility.'" *United

States v. Hope*, 28 F.4th 487, 503 (4th Cir. 2022) (quoting *Najera-Rodriguez v.

Barr*, 926 F.3d 343, 356 (7th Cir. 2019)).

The panel failed to acknowledge or apply these standards.

### A.    The Panel Failed to Apply the Categorical Approach as Required by *Mathis*.

*Mathis* requires that the analysis of whether a particular crime is a "crime of

violence" starts by applying the categorical approach. 579 U.S. at 506. For the

reasons discussed above, application of the categorical approach supports the

conclusion that, like most other murder statutes, federal first-degree murder is an

9

indivisible statute that sets out "multiple 'mental states as alternative means of satisfying the mens rea element of the single crime of first-degree murder,'" *United States v. Lobaton-Andrade*, 861 F.3d 538, 544 (5th Cir. 2017) (quoting *Schad*, 501 U.S. at 642).

The text of the federal murder statute further supports a finding of indivisibility. Because a court "can readily determine the nature of [the] alternatively phrased list," *Mathis*, 506 U.S. at 518, in the first-degree murder statute as means rather than elements, the crime is indivisible. The panel's refusal to apply the categorical approach and its contrary determination conflicts with *Mathis*.

### B.    *Mathis* Is Clear that the Use of the Disjunctive in the First-Degree Murder Statute Is Immaterial to the Divisibility Analysis.

The panel reasoned that because premeditated murder and felony murder are listed in the disjunctive in § 1111(a), this factor weighs in favor of divisibility. *Jackson,* 32 F.4th at 286.[1] But both *Mathis* and *Schad* make evident that the existence of disjunctive terms in a statute makes no difference to the divisibility analysis. The burglary statute at issue in *Mathis* included disjunctive terms, as did

---

[1] The panel's reliance on *United States v. Allred*, 942 F.3d 641, 649 (4th Cir. 2019) is misplaced as *Allred* recognizes that "the use of disjunctive language may not invariably answer the divisibility question, as the listed terms could simply be alternative means rather than alternative elements." *Id*.

the Arizona murder statute at issue in *Schad*. Yet the Supreme Court still found both to be indivisible. *Accord Omargharib v. Holder*, 775 F.3d 192 (4th Cir. 2014). Indeed, the Court in *Mathis* noted that the statute at issue there "concern[ed] a different kind of alternatively phrased law: not one that lists multiple elements disjunctively, but instead one that enumerates various factual means of committing a single element," and then cited *Schad* as an example of such a disjunctive listing of alternative means rather than elements. *Mathis*, 579 U.S. at 506. *Mathis* and *Schad* make it clear that both means and elements can be listed disjunctively in a statute. The panel's decision conflicts with this authority.

C.    **Under *Mathis* and *Schad*, the Fact that Premeditated and Felony Murder Involve Different Types of Conduct Does Not Control the Divisibility Analysis.**

Next, the panel opined that because the underlying conduct of premeditated murder and felony murder differ significantly, this factor weighs in favor of divisibility. *Jackson*, at 286. Again, this reasoning departs from precedent.

Whatever differences there are between felony and premeditated did not stop the *Schad* Court from treating them as different means of committing the single offense of first-degree murder. In other circumstances the Supreme Court has deemed statutes indivisible even though they include significantly different types of conduct. In *Mathis*, the Supreme Court found that the Iowa burglary statute was indivisible even though it covered entry into "any building, structure, *[or] land,*

11

*water, or air vehicle.*" 579 U.S. at 501 (emphasis added); *accord Descamps v. United States,* 570 U.S. 254, 279-80 (2013) (Thomas, J. concurring).

At any rate, the underlying conduct of premeditated and felony murder do not differ significantly. Rather, from the common law to the present, those differences were regularly viewed as alternative means of providing the necessary mens rea for the single crime of murder. As Justice Scalia's example from *Schad* illustrates, there is in fact significant overlap between the two means of commission.

**D.    The Panel Misused the Record Materials under *Mathis*.**

Because the analysis above conclusively establishes that federal first-degree murder under § 1111(a) is indivisible, the panel should have ended its inquiry. Where, unlike here, there is uncertainty, *Mathis* allows a court to "peek at the record documents . . . for the sole and limited purpose of determining whether the listed items are elements of the offense." 579 U.S. at 518 (quotation marks and citation omitted). But these "record materials" must "speak plainly" to determine whether a statute is indivisible or divisible. *Id.* at 519. The record materials here do not speak plainly with the certainty necessary to find the crime divisible under *Mathis*. Indeed, the indictment alone, which charges Mr. Jackson with a single count of murder and alleges premeditation and felony murder as merely separate means of committing this single offense, establishes that the statute is indivisible.

### 1.    The indictment.

*Mathis* establishes that where there is more than one type of conduct charged in a single count of an indictment the terms constitute alternative means for proving a single offense. *Id.* at 519. The indictment here is consistent with *Mathis*. It did not specify first-degree murder and felony first-degree murder as separate crimes. JA0158. Rather, the indictment charged Mr. Jackson with a single count of murder and described premeditated and felony murder as separate means of committing this single crime. JA0159. This is "as clear an indication as any that each alternative is only a possible means of commission, not an element that the prosecutor must prove to a jury beyond a reasonable doubt." *Mathis*, 579 U.S. at 519.

The panel's opinion adds its own enumeration to this single charge to argue that the indictment charges that Jackson separately committed premeditated murder and felony murder. *Jackson*, 32 F.4th at 286. But the indictment charged a single count of first-degree murder, not separate counts of premeditated and felony murder. Contrary to the panel's opinion, this supports a finding of indivisibility rather than divisibility under *Mathis*.

### 2.    The jury instructions.

The jury instructions were inconsistent and likewise lacked clarity. The panel's opinion focuses only on those jury instructions that "point toward

13

divisibility." *Jackson*, 32 F.4th at 286-87. But other jury instructions, ignored by the panel, support a finding of indivisibility.

In instructing the jury, the Court described premeditated and felony-murder as alternative means of satisfying a single element of the crime: "Fifth, the killing of Karen Styles was premeditated; or the killing of Karen Styles occurred during the perpetration of the crime of kidnapping or aggravated sexual assault [sic] . . . " *Id.* at 1246; *see also id.* at 1247 (same).

This instruction integrates premeditated and felony murder as alternative ways to establish the third element of the murder charge. This instruction did not treat premeditated and felony murder as separate and discrete elements of separate crimes and did not require the jury to make separate findings.

Other parts of the instructions did require separate findings. Nevertheless, the conflict between these instructions establishes a lack of certainty that cannot support a finding of divisibility under *Mathis*.

### 3.    The verdict sheets.

Finally, the verdict sheets also do not establish with any certainty that first-degree murder is divisible. In rendering its first general verdict, the jury only found that Mr. Jackson "committed the crime of the murder of Karen Styles" as an underlying "crime[] of violence." *Verdict Sheet* at 1. Only after this verdict was rendered did the jury further find that Mr. Jackson committed this murder with

14

premeditation as well as in the furtherance of the felonies of kidnaping and aggravated sexual abuse. *Verdict Sheet* at 2. Even the special verdict form does not describe these findings as separate crimes, but instead "one or more of the following *ways* of committing murder." *Verdict Sheet* at 2 (emphasis added). The fact that the jury unanimously found three different ways (i.e., means) of committing first-degree murder does not demonstrate with certainty that the statute is divisible.

## III. THE PANEL'S DECISION MAY HAVE A SUBSTANTIAL IMPACT ON PAST AND FUTURE PROSECUTIONS.

By finding § 1111(a) divisible, the panel treats felony murder and premeditated murder as separate offenses, which must be separately charged, and upon which the jury must unanimously agree. *Jackson*, 32 F.4th at 285 ("Each of these components requires the Government to prove a unique element that the jury must find unanimously."). This holding, the first by any court, increases the government's burden of proof by requiring a unanimous finding on a specific form of murder and requires significant changes in the way in which federal first-degree murder can be charged and tried.

Prior to the panel's decision, the law did not require the government to identify a specific form of first-degree murder, but allowed the government to identify multiple forms of murder in a single count. Further, the law did not require

15

the jury to make a unanimous finding on a specific form of murder. As Justice Scalia's hypothetical in *Schad* explained, a jury that could not unanimously agree on premeditated or felony murder could still convict of first-degree murder if they could all agree that at least one form, though not necessarily the same form, of murder had been committed. *Schad*, at 649-50 (Scalia, J., concurring).

The pattern jury instructions from the District Court of South Carolina for §1111(a) exemplifies that point. The suggested instructions do not require the jury to agree on a specific form of murder; rather each juror need only agree that any one of the applicable forms of murder had been proven. Eric Wm. Ruschky, *Pattern Jury Instructions for Federal Criminal Cases, District of South Carolina* at 230-31 (2020 Online Edition).

The panel's opinion changes that. Under the panel's rule, Justice Scalia's hypothetical would result in acquittal, not conviction, because the jury could not unanimously agree on a specific form of murder.

Of course, prior to the panel opinion, the government was free to charge, and the jury was free to convict, a defendant, of a specific form of murder. *Jackson,* 32 F.4th at 286 n.9. But nothing required them to do so. Now, if the panel is correct, the government no longer has that choice. It will be required to charge and prove a specific form of murder.

16

The change may not just affect future prosecutions, it may impact past prosecutions as well. A defendant who was convicted of first-degree murder without a unanimous finding on a specific form of murder may seek to use the panel's opinion to challenge that conviction because an essential element of the crime has not been found unanimously and beyond a reasonable doubt by a jury.

Rehearing is appropriate to give careful consideration to the changes emanating from the panel's opinion.

## CONCLUSION

WHEREFORE, for the foregoing reasons, this Court should grant rehearing *en banc*.

Respectfully submitted,

*/s/Andrew Childers*
Shawn Nolan
Andrew Childers
Federal Community Defender
  for the Eastern District
  of Pennsylvania
601 Walnut Street, Suite 545W
Philadelphia, PA 19106
(215) 928-0520
andrew_childers@fd.org

Dated: June 3, 2022

17

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREEMENTS, AND TYPE STYLE REQUIREMENTS

This petition for rehearing complies with Rules 32(a) & (c)(2) and Rule 40(b)(1) of the Federal Rules of Appellate Procedure because it contains 3,767 words, excluding the parts exempted by Rule 32(f), and has been prepared in a proportionally spaced typeface using Microsoft Word, in fourteen-point Times New Roman font.

*/s/Andrew Childers*
Andrew Childers